IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09–cv–00205–CMA–KMT

ROBERT D. GANDY,

    Plaintiff,

v.

ARISTEDES ZAVARAS,
CATHIE HOLST, and
MICHAEL ARRELLANO,

    Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Kathleen M. Tafoya**
**United States Magistrate Judge**

    This case involves claims that Defendants violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12131, et seq. (hereinafter "ADA"). This matter is before the court on "Defendant's Combined Motion to Dismiss and Memorandum Brief in Support of Motion to Dismiss Plaintiff's Complaint." ([Doc. No. 18] [filed June 8, 2009] [hereinafter "Mot."].) Plaintiff filed his Response on July 9, 2009. ([Doc. No. 31] [hereinafter "Resp."].) This motion is ripe for review and recommendation.

### STATEMENT OF THE CASE

    The following facts are taken from Plaintiff's Second Amended Prisoner Complaint ([Doc. No. 3] [filed February 3, 2009] [hereinafter "Compl."]) and the parties' submissions with

respect to this Recommendation.  Plaintiff is an inmate in the custody of the Colorado Department of Corrections (hereinafter "CDOC").  (Compl. at 2.)  At the time of the events alleged in the Complaint, Defendant Aristedes Zavaras (hereinafter "Zavaras") was the Executive Director of the CDOC, Defendant Cathie Holst (hereinafter "Holst") was the Director of Offender Legal Services as well as ADA Inmate Coordinator for the CDOC, and Defendant Michael Arrellano (hereinafter "Arrellano") was the Warden of the Arkansas Valley Correctional Facility (hereinafter "AVCF").  (*Id.*; Mot. at 1.)

Plaintiff claims he has been diagnosed as suffering from a condition known as benign prostatic hyperplasia (hereinafter "BPH") which makes it difficult for him to urinate freely and with ease.  (Compl. at 3.)  Plaintiff states he has been required to submit to four random drug tests requiring that he provide urine samples.  (*Id*. at 6.)  According to CDOC Administrative Regulation (hereinafter "A.R.") 300-20(IV)(B)(3), offenders "will have one and one-half hours to produce the required urine sample from the time they are ordered to do so."  In the event an offender claims that he/she is unable to provide a urine sample within one and one half hours and after consuming sixteen ounces of water, he/she will be offered "an additional time of 30 minutes and an additional 8 oz of water."[1]  (Mot., Ex. A, CDOC A.R. § 300-20(IV)(C)(1).)

Plaintiff states that on August 19, 2006, he was asked to submit to a random drug test.  (Compl. at 6.)  After two hours, Plaintiff was unable to provide the requested urine sample.  (*Id*.)  As a consequence, Plaintiff was charged with and convicted of "Refusal to Submit to a Drug

---

[1] The court may take judicial notice of agency rules and regulations.  *Ray v. Aztec Well Svcs. Co.*, 748 F.2d 888, 889 (10th Cir. 1984).

Test," a Code of Penal Discipline (hereinafter "COPD") infraction. (*Id*.) Plaintiff claims he submitted to a second random drug test on September 29, 2006. (*Id*.) At the expiration of the two hour time period when he had been unable to urinate, Plaintiff was taken to a holding cell where he provided the requested urine sample approximately one and one-half hours later. (*Id*.) Plaintiff alleges he submitted to another random drug test on April 25, 2007. (*Id*.) Plaintiff claims he provided the requested sample four hours after he was first ordered to do so. (*Id*.) Plaintiff was not charged with any disciplinary infraction based on the September 2006 and April 2007 drug tests. (*Id*.) On December 10, 2007, Plaintiff allegedly submitted to a fourth random drug test. (*Id*.) Plaintiff was unable to provide a urine sample within the two hours allowed. (*Id*.) Plaintiff claims he was again charged with "Refusal to Submit to a Drug Test." (*Id*.) Plaintiff states he presented medical documentation of his condition at a disciplinary hearing and was found not guilty "due to his medical condition." (*Id*.)

In Claim One, Plaintiff alleges the CDOC's A.R. 150-1[2] violates the ADA because there are no provisions contained within it to accommodate persons with disabilities. (*Id*. at 4.) Plaintiff claims Defendant Zavaras "signed off on this regulation which allows for the disciplinary conviction of offenders based solely on infirmities caused by documented medical conditions." (*Id*.) Plaintiff claims this violated his rights under the ADA. (*Id.*)

---

[2] A.R. 150-1 is the general Code of Penal Discipline. The A.R. which is specific to drug testing for inmates is A.R. 300-20. (Resp., Ex. A.) Plaintiff quotes directly from A.R. 300-20 in his complaint. (Compl. at 4.)

In Claim Two, Plaintiff alleges he requested that he be tested by alternative means as an accommodation for his BPH condition. (*Id*. at 5.) Plaintiff claims his request was denied. (*Id*. at 6.) Plaintiff asserts that Defendant Holst, as CDOC Director of Offender Legal Services and ADA Inmate Coordinator, has created a policy under which accommodations are not provided for his BPH condition. (*Id*.) Plaintiff claims the denial of his accommodation request violated his rights under the ADA. (*Id*. at 5.)

In Claim Three, Plaintiff claims Defendant Arrellano, AVCF Warden, also refused to provide alternatives to urinalysis drug testing despite Plaintiff's requests. (*Id*. at 6.) Plaintiff claims this has caused arbitrary and capricious results at disciplinary hearings, thereby violating his rights under the ADA. (*Id*.)

Plaintiff seeks injunctive relief and costs. (*Id*. at 9.) Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim under the ADA. (Mot.)

## STANDARD OF REVIEW

### 1.     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A

4

court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### 2.     *Fed. R. Civ. P. 12(b)(6) - Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1006, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of

analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court "need not accept conclusory allegations without supporting factual averments." *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1940. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

## ANALYSIS

Plaintiff alleges violations of his rights under Title II of the ADA.[3] Title II provides that "no qualified individual with a disability shall, by reason of such disability, be . . . subjected to

---

[3] Title II of the ADA applies to state prisons and prison services. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

discrimination by any such [public] entity."[4]  42 U.S.C. § 12132.  Three methods of proving discrimination are usually available to a plaintiff alleging a violation of Title II of the ADA: "(1) intentional discrimination; (2) discriminatory impact; and (3) a refusal to make a reasonable modification."[5]  *Swenson v. Lincoln County Sch. Dist. No. 2*, 260 F. Supp. 2d 1136, 1144 (D. Wyo. 2003); *see Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir. 2007).

In Claim One,  Plaintiff alleges the CDOC's A.R. violates the ADA because there are no provisions contained within it to accommodate persons with disabilities.  (Compl. at 4.)  In light of the court's obligation to review *pro se* pleadings liberally, *Trackwell*, 472 F.3d at 1243, Plaintiff's Claim One will be construed as a claim that the regulation as written applicable to drug testing, A.R. 300-20, has a discriminatory impact on those suffering from BHP, in violation of the ADA.  Claims Two and Three both allege failure to accommodate or modify, first by Defendant Holst as the ADA Inmate Coordinator and second by Defendant Arrellano as the Warden of AVCF, supervisor over all procedures performed at AVCF.

---

[4] 42 U.S.C. § 12132 also prohibits exclusion from participation in or denial of "the benefits of the services, programs, or activities of a public entity" by reason of disability.  However, based on the factual allegations in the Complaint, only the discrimination prong of § 12132 is applicable.

[5] The term "reasonable accommodation" derives from the language of Title I of the ADA, which differs from Title II's use of the term "reasonable modifications," but the Tenth Circuit "has used the terms interchangeably, referring to an individual's request for a 'modification' under Title II as a request for 'accommodation.' "  *Robertson*, 500 F.3d at 1195 n. 8.

"To prove a violation of Title II, a party must . . . establish: (1) that he is a 'qualified individual' with a disability; (2) that he was . . . discriminated against by a public entity; and (3) that such . . . discrimination was due to his disability." *Harrington v. Wilson*, 2006 WL 2724094, at *14 (D. Colo. 2006); *see* 42 U.S.C. § 12132.

### A.     *Qualified Individual with a Disability*

Defendants argue that Plaintiff's ADA claims fail because he is not disabled as defined by the ADA. (Mot. at 8.)  As it is used in Title II, the term "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

First, to satisfy the ADA's definition of disability, a plaintiff must "(1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities."  *Berry v. T-Mobile*, 490 F.3d 1211, 1216 (10th Cir. 2007).  The phrase physical or mental impairment includes, *inter alia*, any physiological disorder or condition affecting the genitourinary system.  28 C.F.R. § 35.104(1)(i)(A). Pursuant to 42 U.S.C. § 12102(2), major life activities include the operation of major bodily functions such as the digestive, bowel, and bladder functions.  Furthermore, "[a] person is substantially limited when he or she is either unable or significantly restricted in performing a major life activity that a person in the general population can perform without

significant restriction." *Lanman v. Johnson County*, 393 F.3d 1151, 1157 (10th Cir. 2004) (citing 29 C.F.R. § 1630.2(j)(1)).

Here, Plaintiff claims his BPH condition makes urination difficult, affecting his ability to urinate freely and easily. (Compl. at 3–5.) Plaintiff claims his BPH causes him to experience considerable pain and suffering because, despite his fluid intake, he "cannot pass water" from his bladder. (*Id*. at 6.) At this stage of the proceedings, the Plaintiff has set forth facts in his Complaint supporting his contention that he has a qualified disability.

Plaintiff alleges that his BPH condition is the only reason he has been unable to produce a urine sample within the allowed time for completion of the random urinalysis screenings. (Compl. at 4.) A.R. 300-20 calls for "offender drug screening," not urinalysis testing. Urinalysis is but one of several approved methods for offender drug testing. Plaintiff states that he is willing to submit to drug testing by alternative, CDOC-approved means, such as blood, hair, saliva, and perspiration tests. (*Id*. at 5.) CDOC regulations specifically authorize the use of saliva and hair tests "in lieu of a urine test by the DOC facility drug screen coordinator, or designee." (Mot., Ex. A, CDOC A.R. § 300-20(IV)(C)–(E).) Plaintiff alleges he was never offered a saliva or hair test, or any alternative testing method. (Compl. at 5–6.) Plaintiff alleges that with a reasonable accommodation—i.e., drug testing using an alternative, CDOC-authorized method such as saliva or hair tests—Plaintiff would be capable of submitting to a drug test in accordance with CDOC drug testing requirements. (*Id*.) Again, then, at this stage of the proceedings, Plaintiff has set forth facts sufficient to meet the test of a "qualified individual with a disability" as it is used in Title II. *See* 42 U.S.C. § 12131(2).

### B. *Discrimination*

#### i. *Claim One – Discriminatory Impact*

Title II of the ADA seeks "to remedy a broad, comprehensive concept of discrimination against individuals with disabilities, including disparate impact discrimination." *Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850, 859–60 (10th Cir. 2003). It does not appear that the Tenth Circuit has previously analyzed a disparate impact claim within the context of Title II of the ADA. The Tenth Circuit has, however, indicated that traditional disparate impact analysis applies in cases brought under Title II of the ADA. *See Tyler v. Manhattan*, 118 F.3d 1400, 1407 (10th Cir. 1997) ("The traditional disparate treatment/disparate impact analyses apply when one who is entitled to equal treatment claims that he experienced unequal treatment or uneven consequence.").

"Disparate impact claims, as recognized in the Title VII context, challenge 'employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.' " *Ellis v. United Airlines, Inc.*, 73 F.3d 999, 1006 (10th Cir. 1996) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993)), *overruled on other grounds*. "To establish a *prima facie* case of disparate impact discrimination, Plaintiff must prove a 'specific identifiable employment practice or policy caused a significant disparate impact on a protected group.' " *Chavez v. Coors Brewing Co.*, 176 F.3d 488, at *3 (10th Cir. 1999) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15 (1977)). In the employment context, the Tenth Circuit has

held that " '[a] claim of discrimination resulting from the mode of filling a single position does not give rise to a disparate impact.' " *Sandoval v. Boulder*, 388 F.3d 1312, 1326 (10th Cir. 2004) (quoting *Coe v. Yellow Freight Sys., Inc.*, 646 F.2d 444, 451 (10th Cir. 1981)). A claim for disparate impact "generally require[s] statistical evidence to show that a challenged employment practice has a discriminatory impact on members of a protected class." *Id*.

In Claim One, Plaintiff alleges the CDOC's drug screening regulation violates the ADA because there are no provisions contained within it to accommodate persons with disabilities. (Compl. at 4.) Plaintiff has described two incidents in which he was given a citation for failing to urinate within the allowed time. (*Id*. at 6.) Plaintiff has failed to allege that other inmates with BPH have suffered the same or similar consequences. Indeed, Plaintiff himself has not been consistently subjected to the alleged discriminatory impact of this regulation, since, by his own admission, he was only convicted of Refusal to Submit to a Drug Test one out of the four times he failed to provide a urine sample within the allotted time. (*Id*.) One isolated incident, even if true, does not show that A.R. 300-20 has a discriminatory impact on inmates with BHP generally.

Furthermore, this is not a case in which the proper application of a facially-neutral regulation resulted in a disparate impact. As noted, pursuant to A.R. 300-20, in the event an offender claims that he/she is unable to provide a urine sample within the initial one and one-half hours and after consuming sixteen ounces of water, he/she will be offered "an additional time of 30 minutes and an additional 8 oz of water." (Mot., Ex. A, CDOC A.R. § 300-20(IV)(C)(1).) The provision of additional water and time to urinate is but one of a non-exhaustive list of

"alternative testing methods" provided for in A.R. 300-20. CDOC A.R. § 300-20(III)(B). A number of other approved alternatives, including saliva and hair tests "in lieu of a urine test," were available to address Plaintiff's specific disability. *Id.* at § 300-20(IV)(C)–(E)). Had these provisions been utilized, Plaintiff's disability would not have affected his ability to submit to a drug test. As will be set forth in greater detail below, the comprehensive and full application of A.R. 300-20 appears to be the issue, not the provisions of the regulation itself. If applied utilizing all the available alternatives, this policy has no discriminatory impact on disabled persons in the context of the facts of this controversy.

Accordingly, the court finds that Plaintiff has failed to state a claim for discriminatory impact under the ADA in Claim One.

### ii.     *Claims Two and Three – Failure to Accommodate*

"Title II [of the ADA] requires public entities to make accommodations for the disabled. The regulations . . . implementing Title II confirm this reading of the statute." *Thompson v. Colo.*, 278 F.3d 1020, 1029 (10th Cir. 2001), *overruled on other grounds*. 42 U.S.C. § 12134(a) requires the Department of Justice to promulgate regulations to implement the nondiscrimination mandate of Title II. *Robertson*, 500 F.3d at 1195; *see* 42 U.S.C. § 12134(a). One such federal regulation generally provides:

> [a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7). Nevertheless, Title II's prohibition of discrimination against disabled individuals by public entities "unmistakably includes State prisons and prisoners within its coverage." *Yeskey*, 524 U.S. at 209.

Plaintiff alleges he requested that he be allowed to submit to the mandated CDOC drug tests by other means chosen by the facility, including blood samples, hair samples, saliva, and perspiration. (Compl. at 3, 5.) Plaintiff alleges he was denied those alternative testing methods as an accommodation and was, instead, provided only with a limited amount of additional time and water within which to provide the required urine sample. (*Id*. at 6; *see also* Mot. at 4, 6.) Additional time to urinate is defined as an "alternative testing method" in A.R. 300-20; however, as noted, it is only one alternative described in a non-exhaustive list. CDOC A.R. § 300-20(III)(B). Plaintiff claims that, due to his BPH condition, more time and water caused him "pain and suffering" and did not ameliorate his difficulty in providing the required sample. (*Id*.) He asserts the Defendants did not allow him alternative testing methods which would allow him to avoid a COPD conviction after the August 19, 2006 drug test.[6] (*Id*. at 5–6.)

While the ADA requires that Defendants provide a reasonable accommodation in contrast to Plaintiff's preferred accommodation, *Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1263 (10th Cir. 2001), Defendants have an obligation under the ADA to provide "meaningful access" to AVCF's services, programs or activities. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985) ("to assure meaningful access, reasonable accommodations in the [public entity's]

---

[6] It is of note to the court that Plaintiff has never actually failed a urinalysis test by virtue of evidence of drug usage in his system.

program or benefit may have to be made"); *Robertson*, 500 F.3d at 1195 ("The ADA requires more than physical access to public entities: it requires public entities to provide '*meaningful* access' to their programs and services." [emphasis in original]).  The court finds that Plaintiff has set forth facts in his Complaint to sufficiently allege he was denied a meaningful opportunity to submit to a drug test by use of an approved alternate testing method as specifically envisioned by the regulation.

Furthermore, Defendants have failed to show that testing Plaintiff using an alternative, approved means would have fundamentally altered the nature of the test.  Both hair and saliva tests are specifically approved in the regulation.  CDOC A.R. § 300-20(III)(S).  The A.R. actually provides that "medically disabled prisoners will be accommodated as needed."  *Id.* at § 300-20(IV)(B)(13) (emphasis added).  Therefore, Plaintiff has sufficiently alleged facts in support of the second element of a Title II claim for failure to accommodate in Claims Two and Three.

### C.   *Causation*

Under the ADA, Plaintiff must show that the alleged discrimination was due to his disability.  *See Harrington*, 2006 WL 2724094, at *14; 42 U.S.C. § 12132.  Plaintiff has alleged that he was unable to submit a drug test using the method set up by AVCF, and was therefore convicted of a COPD infraction, because he could not provide a urine sample due to his BPH condition.  Plaintiff has cited no other reason for his failure to fully comply with CDOC's drug screening requirements.  Consequently, the court finds, again considering the stage of the

litigation, that Plaintiff has alleged facts sufficient to support the causation element for his Title II claims.

Since Plaintiff has alleged sufficient facts to plausibly state the elements of failure to accommodate claims under Title II of the ADA, the court respectfully

**RECOMMENDS** that "Defendant's Combined Motion to Dismiss and Memorandum Brief in Support of Motion to Dismiss Plaintiff's Complaint" (Doc. No. 18) be **GRANTED** in part and **DENIED** in part as follows:

1) Plaintiff's Claim One and all claims against Defendant Aristedes Zavaras be **DISMISSED** with prejudice; and

2) Plaintiff's Claims Two and Three and the claims against Defendants Cathie Holst and Michael Arrellano be set for further proceedings.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the

Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059–60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 7th day of January, 2010.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge