IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09–cv–00205–CMA–KMT

ROBERT D. GANDY,

      Plaintiff,

v.

JULIE RUSSELL, and
STEVE HARTLEY,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Kathleen M. Tafoya**
**United States Magistrate Judge**

      This case involves claims that Defendants violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* ("ADA").  This matter is before the court on "Defendants' Motion for Summary Judgment"  (Doc. No. 83) filed October 12, 2010.

### PROCEDURAL HISTORY

      Plaintiff filed his Prisoner Complaint on February 3, 2009, asserting claims against Defendants Aristedes Zavaras, Cathie Holst, and Michael Arellano.  (Prisoner Compl. ["Compl."].)  Defendants filed their "Combined Motion to Dismiss and Memorandum Brief in Support of Motion to Dismiss Plaintiff's Complaint" on June 8, 2009.  (Doc. No. 18.)  On January 7, 2010, this court entered its Recommendation that Plaintiffs' Claim One and all claims against Defendant Zavaras be dismissed with prejudice and that Plaintiff's Claims Two and

Three against Defendants Holst and Arrellano be set for further proceedings.  (*See* Doc. No. 42 at 15.)  On February 11, 2010, District Judge Christine M. Arguello issued her Order adopting this court's Recommendation.  (Doc. No. 45.)

On July 7, 2010, this court granted Plaintiff's motion to substitute Defendants Julie Russell and Steve Hartley for Defendants Holst and Arellano, pursuant to Fed. R. Civ. P. 25(d). (*See* Doc Nos. 65 and 73.)  Defendants Russell and Hartley filed their "Motion for Summary Judgment" ("Mot.") on October 12, 2010.  Plaintiff filed his response on October 25, 2010. ("Resp.")  Defendants filed their reply on November 16, 2010.  (Reply.)  This motion is ripe for review and recommendation.

## STATEMENT OF THE CASE

The following facts are taken from Plaintiff's Second Amended Prisoner Complaint and the parties' submissions with respect to this Recommendation.  Plaintiff is an inmate in the custody of the Colorado Department of Corrections ("CDOC").  (Compl. at 2.)  Defendant Russell is the current ADA Inmate Coordinator for the CDOC, and Defendant Hartley is the current Warden of the Arkansas Valley Correctional Facility ("AVCF").  (Mot. at 1.)

Plaintiff claims he has been diagnosed as suffering from a condition known as benign prostatic hyperplasia ("BPH") that makes it difficult for him to urinate freely and with ease. (Compl. at 3.)  Plaintiff states he has been required to submit to four random drug tests requiring that he provide urine samples.  (*Id*. at 6.)  According to CDOC Administrative Regulation ("A.R.") 300-20(IV)(B)(3), offenders "will have one and one-half hours to produce the required

urine sample from the time they are ordered to do so."  (*Id.*; CDOC A.R. § 300-20(IV)(C)(1).)[1]

In the event an offender claims that he is unable to provide a urine sample within one and one

half hours and after consuming sixteen ounces of water, he will be offered "an additional time of

30 minutes and an additional 8 oz of water."  (*Id.*; CDOC A.R. § 300-20(IV)(C)(1).)

   Plaintiff states that on August 19, 2006, he was asked to submit to a random drug test.

(*Id.*)  After two hours, Plaintiff was unable to provide the requested urine sample.  (*Id.*)  As a

consequence, Plaintiff was charged with and convicted of "Refusal to Submit to a Drug Test," a

Code of Penal Discipline ("COPD") infraction.  (*Id.*)  Plaintiff submitted to a second random

drug test on September 29, 2006.  (*Id.*)  At the expiration of the two-hour time period when he

had been unable to urinate, Plaintiff was taken to a holding cell where he provided the requested

urine sample approximately one and one-half hours later.  (*Id.*)  Plaintiff submitted to another

random drug test on April 25, 2007.  (*Id.*)  Plaintiff provided the requested sample four hours

after he was first ordered to do so.  (*Id.*)  Plaintiff was not charged with any disciplinary

infraction based on the September 2006 and April 2007 drug tests.  (*Id.*)  On December 10, 2007,

Plaintiff submitted to a fourth random drug test.  (*Id.*)  Plaintiff was unable to provide a urine

sample within the two hours allowed.  (*Id.*)  Plaintiff was again charged with "Refusal to Submit

to a Drug Test."  (*Id.*)  Plaintiff states he presented medical documentation of his condition at a

disciplinary hearing and was found not guilty "due to his medical condition."  (*Id.*)

---

[1] The court may take judicial notice of agency rules and regulations.  *Ray v. Aztec Well Svcs. Co.*, 748 F.2d 888, 889 (10th Cir. 1984).

In Claim Two, Plaintiff alleges he requested that he be tested by alternative means as an accommodation for his BPH condition.  (*Id*. at 5.)  Plaintiff's request was denied.  (*Id*. at 6.)  Plaintiff asserts that the CDOC's ADA Inmate Coordinator has created a policy under which accommodations are not provided for his BPH condition.  (*Id*.)  Plaintiff claims the denial of his accommodation request violated his rights under the ADA.  (*Id*. at 5.)

In Claim Three, Plaintiff claims that the Warden also refused to provide alternatives to urinalysis drug testing despite Plaintiff's requests.  (*Id*. at 6.)  Plaintiff claims this has caused arbitrary and capricious results at disciplinary hearings, thereby violating his rights under the ADA.  (*Id*.)  Plaintiff seeks an order requiring the CDOC to evaluate medical disabilities under the ADA guidelines and requiring the CDOC to allow Plaintiff to submit to drug testing by means other than urine testing.  (*Id*. at 9.)

## STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that

there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(e)(2).  A disputed fact is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When ruling on a motion for summary judgment, a court may consider only admissible evidence.  *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.  *Concrete Works*, 36 F.3d at 1517.  Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record.  *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

# ANALYSIS

Defendants move for summary judgment on the bases that (1) Plaintiff's claims are barred by the applicable statute of limitations; (2) Plaintiff was appropriately accommodated within existing CDOC policy; and (3) Plaintiff's claims are moot. (Mot. at 9–14.)

## 1. *Statute of Limitations*

A two-year statute of limitations applies to ADA claims. *Quinn v. Univ. of Okla.*, 276 Fed. App'x 809, 810-811 (10th Cir. 2008) (unpublished); *Hughes v. Colo. Dep't of Corrs.*, 594 F. Supp. 2d 1226, 1235 (D. Colo. 2009). "In general, . . . claims accrue and the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). Defendants argue that Plaintiff was aware of the CDOC drug testing policy and that he would be offered additional time and water as an alternative testing method in September 2006. (Mot. at 9.) As such, Defendants contend that Plaintiff's claims are barred because he did not file his lawsuit until February 2009, more than two years after he had reason to know of the existence and cause of the injury which are the bases of this action. (*Id.*)

To the extent Plaintiff asserts claims related to drug-testing incidents that occurred in August and September 2006, pursuant to the two-year statute of limitations applicable in ADA claims, such claims are time-barred and must be dismissed unless Plaintiff establishes that the

6

limitations period is subject to tolling.  The issue of tolling is governed by Colorado state law.

*See Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995).  Colorado's equitable tolling provisions

are "limited to situations in which either the defendant has wrongfully impeded the plaintiff's

ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing

his or her claim despite diligent efforts."  *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094,

1099 (Colo. 1996).

      Under the Prison Litigation Reform Act ("PLRA"), Plaintiffs was required to exhaust all

available administrative remedies prior to filing this suit in federal court.  42 U.S.C. § 1997e(a).

Failure to do so could have resulted in the dismissal of his action.  *See, e.g., Jernigan v. Stuchell*,

304 F.3d 1030, 1032–33 (10th Cir. 2002).  Accordingly, the PLRA's exhaustion requirement

could constitute a circumstance "mak[ing] it impossible for [a] plaintiff to file his [ ] claims

within the statutory period," thus entitling a plaintiff to equitable tolling, "so long as the plaintiff

makes good faith efforts to pursue the claims when possible."  *See Dean Witter*, 911 P.2d at

1097.  The Tenth Circuit does not appear to have decided this legal issue.  However, "[t]he

majority of circuits to address the issue have concluded that the statute of limitations applicable

to a § 1983 action must be tolled while a prisoner completes this mandatory administrative

remedy exhaustion process."  *Smith v. Ortiz*, No. 05-1211, 2006 WL 620871, at *4 (10th Cir.

Mar.14, 2006) (and cases cited therein) (declining to decide the issue because the issues were

untimely even with such tolling).

      Plaintiff argues that the statute of limitations was tolled because he did not receive a final

response to his grievance related to a request for an accommodation until December 2008.

(Resp. at 2.)  Plaintiff filed his grievance related to his request for a determination of his disability status and request for an accommodation for that disability on or about March 26, 2008.  (*See id.* at 11.)  Attached to Plaintiff's motion is a letter dated December 11, 2008, which is characterized as the "final administrative response" to Plaintiff's grievance.  (*Id.* at 12.)  As of December 11, 2008, by tolling the statute of limitations for the time periods during which plaintiff exhausted his claims, Plaintiff would have had nearly five months remaining to file a federal suit regarding the August 19, 2006, incident.  Likewise, Plaintiff would have had just over six months remaining to file a federal suit regarding the September 29, 2006, incident. Plaintiff filed his Complaint in this case on February 3, 2009–less than two months after he exhausted his administrative remedies.  As such, following the majority of courts, this court does not recommend dismissal of Plaintiff's claims related to the incidents that occurred in August and September 2006 based upon the running of the statute of limitations.

Additionally, the court finds the claims related to incidents occurring in April and December 2007 are timely.  Plaintiff could not have known about his injury–caused by defendants' failure to allow Plaintiff to submit to drug testing by means other than urine testing–until each time he was required to submit to drug testing, and the testing authority refused to consider alternate means of testing for drugs as provided for by CDOC policy as discussed *infra*.

Accordingly, this court recommends that Defendants' motion for summary judgment on that basis that Plaintiff's claims are barred by the statute of limitations be denied.

8

2.      *Mootness*

"The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy."  *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).  "A federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them."  *Id.* (internal quotation marks and citation omitted). "[A]n actual controversy must be extent at all stages of review, not merely at the time the complaint is filed."  *Id.* (internal quotation marks and citation omitted).

"The mootness doctrine derives from Article III's requirement that federal courts decide only actual cases between litigants."  *United States v. Dominguez-Carmona*, 166 F.3d 1052, 1055 (10th Cir. 1999), *overruled on other grounds*, *United States v. Meyers*, 200 F.3d 715, 721–22 (10th Cir. 2000).  When a case is moot, federal courts lack power to review it, because to do so would result in an advisory opinion prohibited by Article III.  *Id.*; *see also Jones v. Temmer*, 57 F.3d 921, 922 (10th Cir.1995) (citing *Preiser*, 422 U.S. at 401).

"A case becomes moot when events occur which resolve the controversy underlying it." *Dominguez-Carmona*, 166 F.3d at 1055.

> Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction.  This requirement exists at all stages of federal judicial proceedings, and it is therefore not enough that the dispute was alive when the suit was filed; the parties must continue to have a personal stake in the outcome . . . . When a party seeks only equitable relief, as here, past exposure to alleged illegal conduct does not establish a present live controversy if unaccompanied by any continuing present effects.  In these circumstances, the party must demonstrate a good chance of being likewise injured in the future.

*McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) (internal quotation marks and citations omitted). *See also Transwestern Pipeline v. F.E.R.C.*, 897 F.2d 570, 575 (D.C. Cir. 1990) ("A case is moot if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.").

"When there is a voluntary cessation of a policy," a claim will be rendered moot where "there is no reasonable expectation that the wrong will be repeated." *Sutton v. Rasheed*, 323 F.3d 236, 248–49 (3d Cir.2003). *See also Southern Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) ("[i]f an event occurs while a case is pending that heals the injury and only prospective relief has been sought, the case must be dismissed").

Defendants assert that because they have granted Plaintiff one of the accommodations provided for in the policy–additional time and water–Plaintiff's claims are moot because "no need exists for this court to issue an injunction when prison authorities have voluntarily accommodated Gandy within the confines of existing policy." (Mot. at 14.)  This argument misses the boat.  It is the specific CDOC policy to which Plaintiff objects and for which he seeks injunctive relief to allow him to undergo testing by alternative means.  Plaintiff continues to face the root cause of the particular harms he has alleged suffered in the past.  He reasonably expects that because his medical condition inhibits his ability to take a urinalysis-based drug test under normal conditions, he likely will be subjected to future sanctions stemming from a disciplinary conviction for refusing a drug screening.  Defendants supply no evidence, nor do they argue, that the CDOC policy for drug testing has changed or that there has been voluntary cessation of the policy.

Defendants also argue that "there is no evidence indicating that the CDOC has even requested that [Plaintiff] provide a urine sample for drug testing purposes after the filing of his complaint." (*Id.*)  In a Declaration attached to Plaintiff's Response, Plaintiff states he was called to provide a urine sample for a random drug test on May 21, 2009.[2]  Defendants reply that records relating to Plaintiff's drug test history indicate he was not tested between December 3, 2007, and October 7, 2010.  (Reply at 4, Ex. H.)  According to CDOC A.R. 300-20(IV)(B)(1), "[a] Department of Corrections Information System (DCID) program will randomly select a number of the facility's population to be tested . . . .  Random testing should include a portion of all facility offenders." *Id.*  Again, Defendants have provided no evidence that the CDOC random drug testing policy has been revised or ceased.  As such, it is reasonable to expect that Plaintiff will be subjected to random drug testing again and that the same procedures for which he seeks injunctive relief will be followed.  *See Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (recognizing exception to the mootness doctrine where there is a "reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party") (internal quotation marks and citation omitted).  *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and

---

[2] Title "28 U.S.C. § 1746 provides that where any rule, regulation, order, etc. requires any matter to be supported by a sworn declaration . . . an unsworn declaration, certificate, verification or statement in writing, subscribed as true under penalty of perjury, in statutory form, may support the matter asserted." *Henderson v. Interchem Coal Co., Inc.*, 41 F.3d 567, 570 n.1 (10th Cir. 1994).

generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality.").

Accordingly, this court recommends that Defendants' motion for summary judgment on the basis that Plaintiff's claims are moot be denied.

### 3.    *Reasonable Accommodations*

Defendants' final argument is that they are entitled to summary judgment on Plaintiff's claims because Plaintiff was appropriately accommodated within existing CDOC policy and that the policy is nondiscriminatory.  (Mot. at 10–12.)

Plaintiff alleges violations of his rights under Title II of the ADA.[3]  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be . . . subjected to discrimination by any such [public] entity."[4]  42 U.S.C. § 12132.  Three methods of proving discrimination are usually available to a plaintiff alleging a violation of Title II of the ADA: "(1) intentional discrimination; (2) discriminatory impact; and (3) a refusal to make a reasonable modification."[5]  *Swenson v. Lincoln County Sch. Dist. No. 2*, 260 F. Supp. 2d 1136, 1144 (D.

---

[3] Title II of the ADA applies to state prisons and prison services.  *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

[4] 42 U.S.C. § 12132 also prohibits exclusion from participation in or denial of "the benefits of the services, programs, or activities of a public entity" by reason of disability. However, based on the factual allegations in the Complaint, only the discrimination prong of § 12132 is applicable.

[5] The term "reasonable accommodation" derives from the language of Title I of the ADA, which differs from Title II's use of the term "reasonable modifications," but the Tenth Circuit "has used the terms interchangeably, referring to an individual's request for a 'modification' under Title II as a request for 'accommodation.' "  *Robertson*, 500 F.3d at 1195 n. 8.

Wyo. 2003); *see Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir. 2007).

In their Motion, Defendants do not contest that Plaintiff is a qualified individual with a disability. Rather, Defendants nearly mimic arguments they made in their Motion to Dismiss (*compare* Doc. No. 18 [Defs.' Mot. to Dismiss] at 3–5 *with* Doc. No. 83 [Defs.' Mot. Summ. J.] at 10–12), which this court previously addressed in its Recommendation (*see* Doc. No. 42 at 11–14) that was adopted and affirmed by the District Court (*see* Doc. No. 45).

First, Defendants argue that the drug testing policy, as it exists, is nondiscriminatory, even as applied to Plaintiff. This court specifically recommended dismissal of Plaintiff's Claim One for discriminatory impact because Plaintiff himself has not been consistently subjected to the alleged discriminatory impact of the regulation at issue and because if the regulation is applied utilizing all the available alternatives, including hair, saliva, or quick screen/on-site tests (*see* CDOC A.R. § 300-20(III)(S)), the regulation has no discriminatory impact on disabled persons in the context of the facts of this controversy. (*See* Doc. No. 42 at 11–12.) Because Plaintiff's disparate impact claim has been dismissed, Defendants' argument in this regard is moot.

Second, Defendants argue that, to the extent Plaintiff "believes he is entitled to a modification of existing CDOC policy, his claim fails because he was appropriately accommodated within the confines of existing policy." (Mot. at 11.) This court also specifically addressed this argument in its Recommendation on Defendants' Motion to Dismiss, and the

Recommendation in that regard is adopted again for the purposes of this Motion.  (*See* Doc. No. 42 at 13–16.)

"Title II [of the ADA] requires public entities to make accommodations for the disabled. The regulations . . . implementing Title II confirm this reading of the statute."  *Thompson v. Colorado*, 278 F.3d 1020, 1029 (10th Cir. 2001), *overruled on other grounds*.  42 U.S.C. § 12134(a) requires the Department of Justice to promulgate regulations to implement the nondiscrimination mandate of Title II.  *Robertson*, 500 F.3d at 1195; *see* 42 U.S.C. § 12134(a). One such federal regulation generally provides:

> [a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7).  However, a public entity is not required to "take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens."  28 C.F.R. § 35.150(a)(3). Nevertheless, Title II's prohibition of discrimination against disabled individuals by public entities "unmistakably includes State prisons and prisoners within its coverage."  *Yeskey*, 524 U.S. at 209.

Plaintiff alleges he requested he be allowed to submit to the mandated CDOC drug tests by other means that are specifically included in the Regulation, including blood samples, hair samples, saliva, and perspiration.  (Compl. at 3, 5.)  Plaintiff alleges he was denied the alternative testing methods as accommodations and was, instead, provided only with a limited

amount of additional time and water within which to provide the required urine sample.  (*Id*. at 6.)  Though the CDOC's Administrative Regulation defines additional time to urinate as one of several alternative testing methods, the Regulation also provides that "any other method of testing approved by the Inmate Drug Reduction Program (IDRP)" may be used, including hair, saliva, or quick screen/on-site tests.  CDOC A.R. § 300-20(III)(B) and (S).  Plaintiff claims that, due to his BPH condition, more time and water caused him "pain and suffering" and did not ameliorate his difficulty in providing the required sample.  (*Id*.)

While the ADA requires that Defendants provide a reasonable accommodation, and not the accommodation Plaintiff prefers, *Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1263 (10th Cir. 2001), Defendants have an obligation under the ADA to provide "meaningful access" to AVCF's services, programs or activities.  *See Alexander v. Choate*, 469 U.S. 287, 301 (1985) ("to assure meaningful access, reasonable accommodations in the [public entity's] program or benefit may have to be made"); *Robertson*, 500 F.3d at 1195 ("The ADA requires more than physical access to public entities: it requires public entities to provide '*meaningful* access' to their programs and services." [emphasis in original]).  "Once the plaintiff produces evidence sufficient to make a facial showing that accommodation is possible, the burden of production shifts to the [defendant] to present evidence of its inability to accommodate."  *White v. York Intern. Corp.*, 45 F.3d 357, 361 (10th Cir. 1995).

Here, the evidence shows that an accommodation in the form of alternative means of testing is possible and permissible under the current Regulations without modification.  *See* CDOC A.R. § 300-20(III)(B) and (S).  In addition, the Regulation actually provides that

15

"medically disabled prisoners will be accommodated *as needed*." *Id.* at § 300-20(IV)(B)(13)

(emphasis added).  However, Defendants wholly have failed to provide any evidence of their

inability to accommodate in accordance with the provisions of their own policy, or that allowing

Plaintiff an accommodation would fundamentally alter the nature of the drug testing program

impose an undue hardship or administrative burden.  *See* 28 C.F.R. §§ 35.130(b)(7) and

35.150(a)(3)).  Instead, Defendants insist that the accommodation they have already made by

way of allowing additional time and water is reasonable.  The court finds Defendants have failed

to meet their burden.

Accordingly, for the foregoing reasons, this court recommends that Defendants' motion

for summary judgment based on their argument that the accommodations are reasonable be

denied.

WHEREFORE, this court respectfully

RECOMMENDS that "Defendants' Motion for Summary Judgment" (Doc. No. 83) be

DENIED, and that this matter be set for further proceedings.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had

waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th

Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 10th day of January, 2011.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge

17